**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**GLOBAL COOLING, INC.,**

       **Plaintiff,**

                                        **Case No.: 2:11-CV-1083**
**-v-**                                      **JUDGE SMITH**
                                        **Magistrate Judge Abel**

**E.C. SAGITTAR B.V.,** *et al.*,

       **Defendants.**

**OPINION AND ORDER**

Plaintiff Global Cooling, Inc. initiated this case against Defendants E.C. Sagittar B.V. and Alfred Uytdewilligen in the Athens County Court of Common Pleas and Defendants removed it to this Court on December 5, 2011. After the filing of an initial motion to dismiss, then an Amended Complaint, this matter is now before the Court on Defendants' Second Motion to Dismiss the Second and Third Counts of Plaintiff's Second Amended Complaint (Doc. 42). Plaintiff has responded and this matter is now ripe for review. For the reasons that follow, Defendants' Motion is **GRANTED**.

**I.    BACKGROUND**

Plaintiff Global Cooling, Inc. ("Global") is an Ohio corporation with its principal place of business in Athens County, Ohio. Plaintiff is in the business of developing technology and commercial applications for such technology in the field of free-piston Stirling engines and has developed valuable intellectual property and trade secrets relating to the Stirling engines.

Defendant E.C. Sagittar B.V. ("Sagittar") is a corporation organized and existing under

the laws of the Netherlands and having its principal place of business in Doetinchem, the Netherlands.  Defendant Alfred Uytdewillingen ("Alfred") is a citizen of the Netherlands and CEO of Sagittar.

Some time before October 10, 2008, Defendants came to Ohio to solicit Plaintiff to produce three new designs of Stirling engines to be used by Defendants' customer, Microgen Engine Corporation Holding B.V. ("Microgen").  At that time, Defendants had no Stirling engine designs or technology.

The parties entered into an Agreement on October 10, 2008, which provided that Plaintiff would receive 45% of Sagittar's capital shares in exchange for its designs, IP and technology, and Defendants would have Sagittar merged into Microgen.  Plaintiff produced the designs pursuant to the Agreement and transferred them to Sagittar.

On July 1, 2010, Plaintiff's Chief Technical Officer, David Berchowitz, filed Patent Application number 12/828,387 in the United States Patent and Trademark Office, which covered some of the intellectual property transferred to Defendants ("Patent Application").  This application was assigned Publication number: US 2011/0005220 A1 and remains pending.

On November 30, 2010, Microgen had Sagittar, together with Plaintiff's intellectual property, engine designs and technology, professionally appraised.  The appraisal showed the value of Plaintiff's designs and technology alone to have a fair market value of €11.9 million. Within 8 weeks after the appraisal, on February 1, 2011, Defendants transferred ownership of Sagittar to Microgen through a Hong Kong holding company controlled by a Microgen officer and Plaintiff was not informed of the transfer.

In October 2011, Plaintiff insisted on the transfer of the Sagittar capital shares, without knowledge that Microgen now controlled Sagittar.  When Defendants refused to comply,

Plaintiff wrote letters to Defendants' customers in order to protect Plaintiff's intellectual property rights.  As a result of Plaintiff sending out these letters, Defendants threatened to sue Plaintiff in the Netherlands.  Plaintiff then promptly filed this case in Athens, Ohio.  Shortly thereafter Sagittar filed suit against Plaintiff in the District Court of Zutphen, the Netherlands.

In late May early June 2012, the parties entered into an agreement to resolve two counts of this case whereby Plaintiff agreed to dismiss the Second and Third Counts of its First Amended Complaint with prejudice, agreeing that those claims were preempted by the Ohio Uniform Trade Secret Act.  Despite this agreement, Plaintiff then filed its Second Amended Complaint adding the current claims for unjust enrichment and conversion relating to intellectual property covered by the patent application.

In the Second Amended Complaint currently before the Court, Plaintiff brings the following claims against Defendants: breach of contract, unjust enrichment as to intellectual property covered by the patent application, conversion as to intellectual property covered by the patent application, and violation of the Uniform Trade Secret Act as to intellectual property not covered by the patent application.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a lawsuit for "failure to state a claim upon which relief can be granted."  A Rule 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it.  *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983).  The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim.  Consequently, a complaint will be dismissed pursuant to Rule 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief.  *See Rauch*

3

*v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978). Rule 12(b)(6) must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure, which requires the complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]"

A court, in considering a 12(b)(6) motion to dismiss, must "construe the complaint in the light most favorable to the plaintiff," accepting as true all the plaintiff's factual allegations. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). Although in this context all of the factual allegations in the complaint are taken as true, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Furthermore, to survive dismissal pursuant to Rule 12(b)(6), a claim must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Twombly*, at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, at 1950. While a complaint need not contain "detailed factual allegations," its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, at 555. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " *Iqbal*, at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). In the final analysis, the task of determining plausibility is "context-specific [and] requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III. DISCUSSION

Defendants have moved to dismiss Counts Two and Three of Plaintiff's Second Amended

Complaint.  Count Two specifically states "unjust enrichment as to intellectual property covered by the patent application" and Count Three states "conversion as to intellectual property covered by the patent application."  Defendants argue that these claims must be dismissed because Plaintiff's claims are preempted by the Patent Act.

Plaintiff has alleged the following with respect to Count Two, the unjust enrichment claim: "Defendants have been unjustly enriched by receiving, retaining and failing to return to Plaintiff upon demand its designs and technology covered by the Patent Application, which, in justice and equity, belong to Plaintiff.  *Hummel v. Hummel* (1938), 133 Ohio St. 520, 528, 11 O.O. 221, 14 N.E.2d 923."  (Second Am. Compl. ¶ 22).  And with respect to Count Three, the conversion claim, Plaintiff alleges: "Defendants have wrongfully exercised dominion over Plaintiff's IP, Designs and technology covered by the Patent Application to the exclusion of the rights of Plaintiff, or have withheld same from Plaintiff's possession under a claim inconsistent with its rights.  *Crowe v. Firstenergy Corp.*, 2011-Ohio-5092, 10CA023 (OHCA5)."  (Second Am. Compl. ¶ 25).

Defendants argue that these claims must be dismissed because the claims are based on "designs and technology covered by the Patent Application."  (Second Am. Compl. ¶¶ 22 and 25).  The Patent Application Plaintiff references was published by the United States Patent and Trademark Office on January 13, 2011.  Defendants assert that any claim for misappropriation of trade secrets prior to the publication of the Patent Application are governed by the Ohio Uniform Trade Secret Act.  Plaintiff appears to have conceded this fact and, in fact, withdrew such claims and substituted them for unjust enrichment and conversion based on the Patent Application.  Defendants argue that Plaintiff's remedy on these claims is limited to seeking damages for patent infringement if the patent ultimately issues.  35 U.S.C. § 1 *et seq.*  Defendants, relying on *Joyce v. General Motors Corp.*, 49 Ohio St. 3d 93, 96 (Ohio 1990), argues that, "[i]f the patent does not issue, then

5

Plaintiff has no protectable intellectual property." (Defs.' Mot. at 6).

Plaintiff, however, argues that these are state law tort claims which involve no patent law issue such as inventorship. Additionally, Plaintiff argues that courts have held that a case may proceed on a non-patent theory, citing *Fin Brand Positioning v. Take 2 Dough Productions, Inc.*, 758 F.Supp.2d 37 (D. N.H. 2010).

Plaintiffs in *Fin Brand*, however, asserted that defendants misappropriated services that plaintiffs performed and other intellectual property that is not covered by patent law, including a new logo and various marketing materials that plaintiffs allegedly developed. Based on these allegations, the court held that "neither the pending patent application in particular, nor patent law in general, has any bearing on those allegations." *Id.* at 43. The court continued that where "a claim for misappropriation, unjust enrichment, or unfair and deceptive business practices is supported by both a patent theory and an "alternative, non-patent theory," it may proceed on the non-patent theory, notwithstanding that a pending patent application bars litigation of the patent theory." *Id.* citing *HIF Bio, Inc. v. Yung Shin Pharmaceuticals Indus. Co., Ltd.*, 600 F.3d 1347 (Fed. Cir. 2010) (allowing litigation of such claims, despite a pending patent application, where the plaintiffs alleged misappropriation not only of their invention, but also of their experiments, experimental data, and draft papers).

To the extent that Plaintiff's unjust enrichment and conversion claims depend on the inventorship and patentability of the engines, such claim cannot be litigated while the Patent Application is pending. *See Fin Brand Positioning,* 758 F.Supp.2d at 43. The question before this Court, therefore, is what exactly is the subject of Plaintiff's unjust enrichment and conversion claims. Defendants argue, and the Court agrees, that Plaintiff's claims are based entirely on the ideas contained in the patent application. Defendants state that "[t]here are no ancillary "non-

patent intellectual property" issues in this case." (Defs.' Mot. at 4). Both claims, as set forth in Plaintiff's Second Amended Complaint, specifically reference "designs and technology covered by the Patent application." Even the titles of each claim both state "as covered by the Patent Application."

Accordingly, finding that Counts Two and Three of Plaintiff's Second Amended Complaint both reference designs and ideas covered by the Patent Application, those claims are barred by the Patent Act.

## IV.    CONCLUSION

Based on the aforementioned, the Court **GRANTS** Defendants' Motion to Dismiss Counts Two and Three of Plaintiff's Second Amended Complaint. Counts Two and Three are hereby dismissed. This case remains pending as to the remaining claims in this case.

In light of the filing of the Second Amended Complaint and ultimately this Opinion and Order, documents 22 and 30 are now **MOOT**.

The Clerk shall remove Documents 22, 30, and 42 from the Court's pending motions list.

**IT IS SO ORDERED.**

  _/s/ George C. Smith_____
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**